UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Anita Eisenhauer,

                              Plaintiff,

                - against -

Culinary Institute of America,

                              Defendant.

19 Civ. 10933 (PED)

**DECISION
AND ORDER**

**PAUL E. DAVISON, U.S.M.J.:**

## I.  INTRODUCTION

Plaintiff Anita Eisenhauer brings this action alleging wage discrimination pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), and the New York Equal Pay Law, N.Y. Lab. Law § 194 against her employer, the Culinary Institute of America.  Both parties have moved for summary judgment.  [Defendant's Motion at Dkt. 23; Plaintiff's Motion at Dkt. 27.]  For the reasons that follow, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

## II.  BACKGROUND

### A.    Statement of Facts

The facts are undisputed unless otherwise stated and are taken largely from the parties' Rule 56.1 statements and attached exhibits.  [Defendant's Rule 56.1 Statement at Dkt. 26; Plaintiff's Rule 56.1 Statement at Dkt. 28.]

#### 1.    *Culinary Institute of America*

Defendant is a private, non-profit college and culinary school located in Hyde Park, New York.  Faculty are divided between two main divisions, Culinary Arts and Baking and Pastry Arts.  The Culinary Arts division is broken down into departments: fundamentals, restaurant

education and high volume production, culinary science, and culinary specialization.

Defendant's faculty were unionized under the Culinary Teachers Association (the "Union"), which had collective bargaining agreements with Defendant in effect before and at the time Plaintiff was hired, and throughout the relevant period. Faculty positions were "ranked," with lecturing instructor as the lowest rank, followed by assistant professor, associate professor, and finally professor. The collective bargaining agreement established minimum salaries for each rank, which would apply to all current and future faculty members. The collective bargaining agreement also established set percentages for automatic annual pay increases that would apply to all faculty, as well as set values for pay increases for faculty promotions. Pay increases were also subject to an employee handbook between Defendant and the Union, which established set values for pay increases for earning additional educational degrees and certifications. Defendant and the Union would periodically renegotiate the collective bargaining agreement and amend the values and percentages for salary increases.[1]

### 2.    *Plaintiff's Work and Salary History*

Defendant hired Plaintiff on July 29, 2002 at a salary of $50,000.08 as a lecturing instructor. Based on Plaintiff's application, she had three years of college experience and studied political science and psychology, but she had not earned her degree at that time. When Plaintiff was hired, she had six years of culinary experience and worked as a sous chef from 1996 to 1997,

---

[1] The parties submitted a collective bargaining agreement between Defendant and the Union in effect beginning March 2015 and extended through May 31, 2021 by a memorandum of understanding. [Dkt. 24-3.] The parties also submitted an employee handbook stipulated as being between Defendant and the Union, though the handbook is not dated. [Dkt. 24-4.] The parties agreed that the values in the March 2015 collective bargaining agreement had changed from prior versions of the agreement. The parties stipulate to the specific values and percentages for pay increases, as described below.

an executive chef from 1997 to 1999, a chef consultant from 1999 to 2001, and as an executive chef from 2001 to 2002. She trained with notable chefs and restauranteurs including Geoffrey Zakarian, Jacques Torres, and Melissa Hamilton. The application process included a practical cooking demonstration, where Plaintiff scored an 80 out of 100, and a lecture demonstration, where Plaintiff scored a 68 out of 100.

Plaintiff received automatic annual pay increases based on the percentages set in the collective bargaining agreement in effect at that time. The parties stipulate that Defendant properly applied the appropriate percentage each year. In addition, on June 1, 2005, Plaintiff was promoted from lecturing instructor to assistant professor, and her salary increased to $66,184.75. She received a $10,000 annual stipend for serving in one of the school's restaurants from March 2005 to February 2008. On June 1, 2008, Plaintiff was promoted to associate professor, and her pay increased to $70,821.31. She received a raise in October 2009 after earning her bachelor's degree, and her salary increased to $74,889.38. Plaintiff was promoted from associate professor to professor in June 2013 with a salary of $92,030.37. She received her master's degree in business administration in August 2016, and with it a pay increase to $101,329.44. On June 1, 2020, based on additional contractual increases, Plaintiff's salary became $114,879.64.

### 3.    *Salary and Work History of Plaintiff's Comparator*

Plaintiff identifies one single employee, Robert Perillo, as a relevant comparator to establish her claim for unequal pay. Perillo was hired as a lecturing instructor on July 28, 2008 at $69,999.98. At the time, Plaintiff was an associate professor, two ranks above Perillo with six years of seniority, making $70,821.31. At the time of his hire, Perillo had already received an associate's degree in culinary arts from Defendant in 1986. He also had over 21 years of culinary

work experience in restaurants in New York City as a chef and sous chef and teaching experience at the French Culinary Institute in New York.  As part of his application, Perillo scored 84 out of 100 for his practical cooking demonstration and 91 out of 100 for his lecture demonstration.

Perillo became an assistant professor in June 2011, and with an additional contractual increase, his salary became $80,836.33.  At that time, Plaintiff was an associate professor, one rank above Perillo and earning $80,137.63.  Perillo earned an undergraduate degree in June 2012, and his pay was increased to $83,715.84, whereas Plaintiff was making $82,060.93 at that time. Perillo earned an MBA in May 2015, and his pay was increased to $88,939.52.  At that time, Plaintiff was making $93,870.98, having already been promoted to professor, setting her two ranks above Perillo again.  Perillo was promoted from assistant professor to associate professor in June 2016, making $98,994.96, while Plaintiff was a full professor making $99,829.44. Perillo was promoted again in June 2017 to professor, the same position as Plaintiff.  At that time, Perillo made $111,032.99, while Plaintiff was making $104,622.65.  After additional contractual increases, Perillo's annual salary was $121,917.66 as of June 1, 2020, while Plaintiff earned $114,879.64.

## B.    Procedural History

Plaintiff commenced this action on November 26, 2019.  [Complaint at Dkt. 1.]  Based on the parties' consent, on September 25, 2020 this matter was referred to me to conduct all proceedings and enter a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  [Order of Assignment at Dkt. 15.]  Upon completing discovery, Defendant moved for summary judgment [Dkt. 23-26.]  Plaintiff cross-moved for summary judgment.  [Dkt. 27-29.] Both parties filed responses in support of their motions and in opposition to the opposing

4

motions [Defendant's Response/Reply at Dkt. 30-31; Plaintiff's Response/Reply at Dkt. 33.]

Both parties requested oral argument.  [Defendant's Request at Dkt. 32; Plaintiff's Request at

Dkt. 34.]  Oral argument was held on September 24, 2021.

### III.  LEGAL STANDARD

**A.**      **Standard for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material within the meaning of Rule 56 where it "might affect the outcome of the

suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

dispute about a material fact is "genuine" when "the evidence is such that a reasonable jury could

return a verdict for the non-moving party." *Id*. at 248.  In determining whether the moving party

has met its burden of proving that there are no genuine disputes of material fact, the court must

resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion.

*See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "Assessments of credibility

and choices between conflicting versions of the events are matters for the jury, not for the court

on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

Where "the nonmoving party bears the burden of proof at trial, summary judgment is

warranted if the nonmovant fails to make a showing sufficient to establish the existence of an

element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and

citation omitted).  Thus, "[a] defendant moving for summary judgment must prevail if the

plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried

with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir.

1996).  On the other hand, summary judgment must be denied if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

**B.**      **The Equal Pay Act and New York Equal Pay Law**

Claims under the Equal Pay Act and the New York Equal Pay Law may be considered together.  *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 570 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) ("Claims for violations of the Equal Pay Act and the New York State Equal Pay Act may be evaluated under the same standard.").  *See also Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 284-85 (S.D.N.Y. 2020) (analyzing the plaintiff's Equal Pay Act and New York Equal Pay Law claims together on the defendant's motion to dismiss).

The Equal Pay Act prevents employers from discriminating among employees on the basis of sex by paying disparate wages for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (citing 29 U.S.C. § 206(d)(1)).  The Equal Pay Act is a strict liability statute, and so a plaintiff need not show an employer's discriminatory intent.  *Id.* at 135-36 (internal citations omitted).

To prove a violation under the Equal Pay Act, a plaintiff must first establish a prima facie case of pay discrimination by showing: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions.  *Belfi*, 191 F.3d at 135 (internal citations omitted).  "[A] prima facie showing gives rise to a presumption of discrimination."  *Id.* at 136.  "A plaintiff need not demonstrate that her job is identical to a higher

paid position, but only must show that the two positions are 'substantially equal'" in skill, effort, and responsibility. *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001). Whether different positions are "substantially equivalent" for the purposes of the Equal Pay Act is usually a question of fact to be resolved by a jury. *Id.* However, "two positions may be so different such that no reasonable juror could conclude that they are substantially equal." *Drury v. Waterfront Media Inc.*, Case No. 05 Civ. 10464 (JSR), 2007 WL 737486, at *3 (S.D.N.Y. March 8, 2007).

Once a plaintiff makes a prima facie case, the burden shifts to the employer to justify the wage differential by showing that the disparity results from one of four sources: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on "any other factor other than sex." *Aldrich v. Randolph Center School District*, 963 F.2d 520, 524 (2d Cir. 1992) (citing 29 U.S.C. § 206(d)(1)). "The burden of establishing one of the four affirmative defenses is 'a heavy one.'" *Ryduchowski v. Port Auth. of New York & New Jersey*, 203 F.3d 135, 143 (2d Cir. 2000). A job classification system that is gender-neutral on its face may qualify under the factor-other-than-sex defense only when it is based on legitimate business-related considerations. *Aldrich*, 963 F.2d at 525. Therefore, the employer "bears the burden of proving that a bona fide business-related reason exists for using the gender-neutral factor that results in a wage differential in order to establish the factor-other-than-sex defense." *Id.* at 526.

Once an employer establishes one of the four affirmative defenses, the burden shifts back to the plaintiff to show that the stated reason was, in fact, a pretext for sex discrimination. *Chepak v. New York City Health & Hosps. Corp.*, Case No. 11 Civ. 9698 (KBF), 2015 WL 509279, at *9 (S.D.N.Y. Feb. 5, 2015), *aff'd*, 643 F. App'x 62 (2d Cir. 2016). "The appropriate

inquiry to determine if the factor put forward is a pretext, is whether the employer has use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices." *Id.* (internal citations omitted).  "[A] reason cannot be proved to be 'a pretext *for discrimination'* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)) (emphasis in original).  In general, evidence that a stated reason for a pay differential is actually a pretext creates a triable issue of fact.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 81 (2d Cir. 2001).  However, a court may reject a plaintiff's assertion as a matter of law if they offer "nothing more than speculation" that a stated reason was merely a pretext for discrimination.  *Boatright v. U.S. Bancorp*, Case No. 18 Civ. 7293 (LJL), 2020 WL 7388661, at *13 (S.D.N.Y. Dec. 16, 2020).

## IV.  DISCUSSION

### A.      Plaintiff Makes a Prima Facie Case

Plaintiff attempts to establish a prima facie case of gender-based pay discrimination by pointing to a single male comparator, Professor Perillo.  The parties agree, and the evidence shows, that Plaintiff and Perillo performed equal work in substantially similar positions and under similar working conditions, thus satisfying the second and third prongs of the prima facie standard.  Plaintiff is a professor in the Culinary Arts Department and focuses on the global specializations curriculum where she teaches all three courses in Mediterranean, Asian, and American cuisine.  Perillo is also a professor in the same department and teaches Mediterranean and American cuisine, but not Asian cuisine.  Perillo himself testified that he and Plaintiff often fill in for each other's classes, have the same duties, perform at substantially the same level of skill and effort, and that they have substantially the same job duties.  Given the facts and the

8

parties' agreement, there is sufficient evidence to find as a matter of law that both employees

performed equal work in substantially similar positions.

The parties also agree, and the evidence shows, that Perillo made more than Plaintiff

beginning June 2017, when Perillo was promoted to the position of professor.  Defendant

concedes the pay disparity and conceded at oral argument that, based on the payment structure

established by the current collective bargaining agreement, Plaintiff will never be able to reach

the same or greater pay as Perillo.  The question for the Court, however, is whether Plaintiff may

satisfy the first prong of the prima facie standard, that Defendant pays different wages to

employees of the opposite sex, by pointing only to a single male comparator while disregarding

the salaries of other employees.

Plaintiff argues that, for the purposes of establishing a prima facie case, it is sufficient to

identify only a single comparator, at which point the salaries of all other employees become

irrelevant.  Defendant argues that a single comparator cannot be used to establish that the

employer pays different wages to employees of the opposite sex, and notes that other male

employees made less than Plaintiff, and other female employees made more than other male

employees.  Both parties cite *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476 (2d Cir. 2001) in

support of their respective positions.

The facts in *Lavin-McEleney* are similar to the facts here, however its procedural

disposition distinguishes it from the instant motions.  The plaintiff in *Lavin-McEleney* was an

associate professor of criminal justice at Marist College, the defendant in that case.  *Lavin-*

*McEleney v. Marist College*, Case No. 96 Civ. 4081 (MDF), 1999 WL 33500070, at *1

(S.D.N.Y. Sept. 28, 1999).  The case was fully tried before a jury, which found for the plaintiff

on her wage discrimination case under the Equal Pay Act. *Id.* However, before reaching the jury, the defendant moved for summary judgment on the basis that the plaintiff had failed to establish a prima facie case. *Lavin-McEleney*, 239 F.3d at 477. At *that* stage of the litigation, the plaintiff had only identified two other comparable employees, a male who made more than the plaintiff, and a female who earned more than both the male employee and the plaintiff. *Id.* at 480. Because the case went to the jury, it is implied that the district court found that the defendant was not entitled to summary judgment because the plaintiff had met her prima facie burden after identifying a single male comparator. On appeal, when the defendant sought to overturn the district court's denial of their motion for summary judgment, the Second Circuit declined to address that argument, reasoning, "'once a [discrimination] case has been fully tried on the merits, the question of whether the plaintiff has established a prima facie case is no longer relevant.'" *Id.* at 479 (internal citations omitted).

At the close of the plaintiff's case at trial, the defendant moved for a judgment as a matter of law under Fed. R. Civ. P. 50(a), which the district court denied, and after which the jury found for plaintiff under her Equal Pay Act claim. *Lavin-McEleney*, 239 F.3d at 479. After the jury verdict, the defendant renewed its Rule 50(a) motion, which was once again denied. *Id.* On appeal, the Second Circuit considered whether the denial of the defendant's Rule 50(a) motions was improper, reviewing *de novo* the evidence presented to the jury. *Id.* at 479-80.

At trial, the plaintiff presented evidence not only of the single male comparator, but also statistical data concerning a composite of male faculty members. *Lavin-McEleney*, 239 F.3d at 481. The Second Circuit relied on cases from the Fourth Circuit for the proposition that "once a male comparator has been identified, statistical averages may be employed." *Id.* (citing *Strag v.*

*Bd. of Trs.*, 55 F.3d 943, 948 (4th Cir. 1995)).[2]   However, the Second Circuit pointed out that in the Fourth Circuit, "'[t]he plaintiff may not compare herself to a hypothetical male with a composite average of a group's skill, effort, and responsibility,'" at the outset, and instead a plaintiff must first "identify a particular male for the inquiry" prior to introducing statistical data. *Lavin-McEleney*, 239 F.3d at 481 (citing *Houck v. Va. Polytechnic Inst. & State Univ.*, 10 F.3d 204, 206 (4th Cir. 1993)).[3]   Accordingly, the Second Circuit held that the plaintiff could introduce statistical evidence, in addition to identifying a single male comparator, when presenting her case to the jury.  *Id.* at 481.

Thus, *Lavin-McEleney*, as well as the discussions from the Fourth Circuit cited by the Second Circuit, show that a plaintiff may identify a single male comparator at the initial stage of the case, as Plaintiff has done here, but can later introduce additional data when addressing the ultimate merits of the case at trial.  In each case, the plaintiff was required to identify a single male employee at the initial stage of litigation in order to establish a prima facie burden.  The plaintiff in *Lavin-McEleney* did so, as Plaintiff does here, and was thus able to proceed to the next step in the inquiry and ultimately present additional evidence at trial.

Defendant interprets *Lavin-McEleney* to mean that identifying a single male comparator is insufficient to establish a prima facie case in the context of a motion for summary judgment,

---

[2] In *Strag v. Bd. of Trs.*, the Fourth Circuit affirmed the district court's finding of summary judgment in favor of the defendant on the basis that the plaintiff failed to establish, as a matter of law, that she and her male comparator worked in substantially similar roles, but took no issue with the plaintiff's identification of no more than a single comparator.  *Id.* at 949-50.

[3] In *Houck v. Va. Polytechnic Inst. & State Univ.*, the Fourth Circuit affirmed the district court's finding of summary judgment in favor of the defendant because the plaintiff failed to identify *any* male comparators.  *Id.* at 206.  The Fourth Circuit stated that the plaintiff needed to "show that she recieves less pay than *a* male coemployee."  *Id.* (emphasis added).

which is the question the Second Circuit expressly declined to consider.  Instead, the Second

Circuit considered the sufficiency of the evidence at trial, as well as in the context of a motion for

a judgment as a matter of law.  The Court agrees that identifying a single male comparator may

be insufficient to prove discrimination as a matter of fact before a jury, but to extend the ruling in

*Lavin-McEleney* to a motion for summary judgment would go beyond the Second Circuit's

holding.  Instead, the Second Circuit's holding in *Lavin-McEleney*, as well as the district court's

denial of the defendant's summary judgment motion, show that identifying a single male

comparator is sufficient to make a prima facie case prior to trial.

Courts in this district have interpreted *Lavin-McEleney* the same way.  *See, e.g.*, *Kenny v.

City of Suffolk*, Case No. 05 Civ. 6112 (ADS)(WDW), 2009 WL 10701413 (E.D.N.Y. Jan. 13,

2009).  In *Kenny*, the defendant moved for summary judgment after the plaintiff identified only a

single male comparator to establish her claim under the Equal Pay Act.  *Id.* at *2, 10.  Relying on

*Lavin-McEleney*, the court in *Kenny* denied the defendant's motion for summary judgment,

holding in relevant part that the plaintiff could rely on a single male comparator to make a prima

facie case.  *Id.* at 10.  The court reasoned, "although the plaintiff's allegations with respect to a

single male comparator are sufficient to withstand the present motion, at trial, she may be

required to provide additional statistical evidence as to the salaries of other male assistants." *Id.*

(citing *Lavin-McEleney*, 239 F.3d at 482).  Courts in this district have reached the same

conclusion relying on *Lavin-McCleney*.  *See, e.g. Isbell v. City of New York*, 316 F. Supp. 3d 571,

589 (S.D.N.Y. 2018) (denying summary judgment where the plaintiff identified a single male

comparator).  The Court agrees with this interpretation, that Plaintiff may proceed after

identifying only a single male comparator at this stage.

12

Defendant argues that it should be able to rebut Plaintiff's prima facie showing by pointing to the salaries of other similarly situated employees to show that female employees were not, as a whole, paid less than male employees, and that the Court should make that finding as a matter of law.  In support of this argument, Defendant relies on *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015).  In *Talwar*, the Eastern District of New York granted the employer's motion for summary judgment on the plaintiff's Equal Pay Act claims where the plaintiff identified only a single male comparator, after finding that female employees, as a whole, did not earn less than male employees as a whole.  *Talwar v. Staten Island University Hospital*, Case No. 12 Civ. 0033 (CBA)(JMA), 2014 WL 5784626, at *11 (E.D.N.Y. Mar. 31, 2014), *aff'd in part, vacated in part, remanded*, 610 F. App'x 28 (2d Cir. 2015).  The Second Circuit affirmed the district court's finding, reasoning that "male attending pathologists were not, as a group, paid more than female attending pathologists."  *Talwar*, 610 F. App'x at 30-31.

The Court agrees that the ruling in *Talwar* would allow Defendant to attack Plaintiff's prima facie showing and look beyond only the salaries of Plaintiff and the comparator.  But we must reconcile this argument with the Second Circuit's instruction in *Lavin-McEleney*, that whether two positions are substantially similar for the purposes of the Equal Pay Act is typically a question of fact for the jury.  *Lavin-McEleney*, 239 F.3d at 480.  Put another way, in order to look beyond the salaries of only Plaintiff and the comparator, Defendant must establish, as a matter of law, that the other employees are in substantially similar positions as Plaintiff and performed their work in similar working conditions.

The Court must also reconcile Defendant's argument with the district courts' findings in *Lavin-McEleney,* and the progeny of the Second Circuit's affirmance of the same, that identifying

13

a single comparator would be sufficient to make a prima facie case at this stage of the litigation. Indeed, in *Lavin-McEleney*, the plaintiff was able to proceed after identifying only a single male comparator, and despite the fact that a third employee was identified–a female who made more than both the plaintiff and the comparator. *Lavin-McEleney*, 239 F.3d at 480. Put another way, if Defendant cannot establish the absence of a pay disparity as a matter of law, then Plaintiff's prima facie showing must stand, despite the existence of employees who may serve as counterexamples to wage discrimination at trial.

Given this framework, Defendant fails to show, as a matter of law, the absence of a pay disparity when viewing the salaries of other employees, and, in that regard, the instant case is factually dissimilar from *Talwar*. In *Talwar*, the Second Circuit noted that two male employees in the plaintiff's position earned substantially less than she, and that another female employee in the same position earned substantially more than the plaintiff's comparator. *Talwar*, 610 F. App'x at 30-31. Here, Defendant identifies numerous faculty members who made considerably less than Plaintiff as of June 2019. However, at that time, Plaintiff was a professor, and the male employees identified by Defendant who made less than she were in lower positions as associate and assistant professors. Other faculty members identified by Defendant taught in other departments. It may make factual sense that professors at higher levels perform greater work than those at lower levels, thus warranting higher pay, and that the amount of work in different departments may differ considerably. But these are factual inquiries which the Court cannot resolve in summary judgment. Instead, the Court must view these questions of fact in favor of the non-moving party. As such, Defendant cannot, as a matter of law, rely on these employees.

14

Defendant also fails to show the absence of a pay disparity as a matter of law when viewing the employees in Plaintiff's position and in her department. Including Plaintiff and the comparator, there are eight professors who teach in the Culinary Arts – Specialization department. Of those employees, four are males who make more than Plaintiff. There are two other female professors who make more than both Plaintiff and the comparator, but less than the average of the other three male professors. The remaining professor is a male who makes less than Plaintiff, but who may have left his position in 2014. Whereas in *Talwar* the district court and the Second Circuit were able to find the absence of a pay disparity as a matter of law, the Court simply cannot do so here. Venturing into these factual issues, the Court must view the evidence in the light most favorable to Plaintiff as the non-moving party. The evidence simply does not show the absence of a pay disparity as a matter of law. Accordingly, Plaintiff has satisfied her burden in establishing a prima facie case.

**B.      Defendants Articulate a Non-Discriminatory Justification**

Because Plaintiff establishes a prima facie case of a gender-based pay disparity, the burden shifts to Defendant to establish, as a matter of law, one of the four affirmative defenses. Defendant invokes the fourth affirmative defense, that the pay differential was based on a factor other than sex. Specifically, Defendant argues that the pay disparity between Plaintiff and the comparator was caused by the comparator's prior experience, education and professional credentials at the time of hire, and that the pay disparity continues because of the formula established by the collective bargaining agreement. Plaintiff argues that Defendant's justification cannot serve as an affirmative defense because Defendant's system for setting salaries and subsequent increases is not rooted in legitimate, business-related reasons.

Before addressing the legal arguments, it is important to first establish the actual cause of the pay disparity between Plaintiff and the comparator.  Plaintiff was hired as a lecturing instructor in 2002 with a starting salary of $50,000, which the parties agree was the base salary at that time for that position.  The comparator was hired as a lecturing instructor in 2008, at which time the base salary for that position had been increased to $67,000, with a maximum salary of $70,000.  However, Defendant elected to give the comparator a higher starting salary, just shy of the $70,000 maximum.  At that time, Plaintiff had been working as an associate professor, two ranks higher than the comparator, while making only slightly more than him.  The parties agree that the initial salaries "locked" both employees into the formula established under the collective bargaining agreement.  The parties also agree that the pay increases established in the collective bargaining agreement in effect at the time had been properly applied to both employees.

When examining the pay schedules of Plaintiff and the comparator, it is apparent that both salaries were similar to each other throughout most of the relevant period, even though the comparator's position was one or two ranks below Plaintiff's.  However, because their salaries were so close together, the comparator's salary jumped ahead of Plaintiff's when he was promoted to a full professor.  This indicates that the pay disparity was caused by the difference between the starting salaries, and the collective bargaining agreement now prevents Plaintiff from ever reaching the comparator's salary, despite working in the same position and under similar conditions.  Therefore, the question becomes whether Defendant's reasons for the disparity in the employees' starting salaries, in conjunction with the rigidity of the collective bargaining agreement, may serve as a factor other than sex rooted in legitimate, business-related reasons.

The parties appear to agree, and the evidence shows, that the disparity between the initial salaries was due to non-discriminatory, business-related reasons.  When Plaintiff was hired, she had six years of prior culinary experience, as compared to the comparator's 21 years of experience.  Plaintiff did not have a degree, whereas the comparator had already earned a degree from Defendant.  The comparator also scored higher in both the practical cooking and teaching demonstrations during the interview process.  Courts have found that an employer is entitled to pay employees more when they have greater work experience, better professional credentials, and more advanced educational degrees than other employees, and that these reasons serve as legitimate, business-related reasons under the Equal Pay Act.  *Virgona v. Tufenkian Imp.-Exp. Ventures, Inc.*, Case No. 05 Civ. 10856 (GEL), 2008 WL 4356219, at *10 (S.D.N.Y. Sept. 23, 2008) (collecting cases).  Moreover, Plaintiff does not contend that the reasons offered by Defendant to justify the disparity in the *starting* salaries would not qualify as a legitimate, business-related justification.

Plaintiff takes issue with the fact that Defendant's adherence to the collective bargaining agreement essentially mandates that Plaintiff will always be paid less than the comparator, despite being in the same position under the same working conditions, in perpetuity.  Plaintiff argues that the formulaic computations of increases are not related to any legitimate business interest, and locking employees into a salary differential based on the initial starting salary also serves no legitimate business purpose.  Defendant conceded at oral argument that, based on the collective bargaining agreement, Plaintiff will never be able to earn the same salary as the comparator, despite being in the same position, and the salary differential will only increase over

17

time.  Still, Defendant argues that relying on the initial starting salary to determine future salary

levels serves a legitimate, non-discriminatory and business-related interest as a matter of law.

Plaintiff is correct that an employer cannot simply point to a facially gender-neutral

collective bargaining agreement to disprove wage discrimination under the equal pay act.

*Marshall v. Amityville Union Free School District*, Case No. 77 Civ. 2038, 1978 WL 199, at \*5

(E.D.N.Y. Dec. 20, 1978) (striking the argument that a facially gender-neutral clause in a

collective bargaining agreement could be used as a defense to a violation of the Equal Pay Act);

*see also Aldrich*, 963 F.2d at 525 ("we conclude that employers cannot meet their burden of

proving that a factor-other-than-sex is responsible for a wage differential by asserting use of a

gender-neutral classification system without more.").  Nevertheless, courts in this district have

found that a gender-neutral salary structure, including collective bargaining agreements, that is

determined from initial starting salaries may serve as a factor other than sex under the Equal Pay

Act as a matter of law to justify wage disparities that arise in the future.

The Second Circuit dealt with a factually similar situation in *Belfi v. Prendergast*, 191

F.3d 129, 136 (2d Cir. 1999).  After the plaintiff in *Belfi* alleged a pay disparity under the Equal

Pay Act, the employer asserted a factor other than sex citing its "gender-neutral application of the

Salary Plan."  *Id.* at 136.  The Second Circuit explained that the employer first assessed initial

salaries on the basis of "skills and talents needed to perform the job," among other factors

including prior experience in the field, and that salaries were subsequently increased in

accordance with the salary plan.  *Id.* at 133-34, 137.  The defendant argued that the pay disparity

was caused not by discrimination, but because of application of the salary plan and subsequent

pay increases.  *Id.* at 136-37.

18

The district court in *Belfi* granted summary judgment in favor of the employer, holding in part that the employer's application of the salary plan was, as a matter of law, a factor other than sex. *Belfi v. Long Island R.R.*, Case No. 96 Civ. 1490 (AGS)(RJW), 1998 WL 132951, at *3 (S.D.N.Y. Mar. 20, 1998), *aff'd in part, rev'd in part and remanded sub nom.*, 191 F.3d 129 (2d Cir. 1999).  On appeal, the Second Circuit agreed with that portion of the district court's decision, holding "we agree, that the LIRR proffered the above gender-neutral explanations in response to Belfi's claim of unequal pay." *Belfi*, 191 F.3d at 137.[4]  Applying this finding to the facts here, the Court finds that Defendant's application of the collective bargaining agreement, which the parties stipulate was facially gender-neutral, coupled with the initial salary decisions, which the parties also agree were based on legitimate business-related reasons, properly serves as a factor other than sex under the Equal Pay Act as a matter of law.

Plaintiff argues that the collective bargaining agreement cannot serve as a legitimate, business related reason because the pay increases are not tied to merit, but instead are automatic and applied across all employees.  In other words, Plaintiff argues that the inability for an employee to be compensated more based on merit after an initial salary has been determined cannot serve as a legitimate, business-related interest because that system, by design, does not

---

[4] The Second Circuit ultimately reversed the district court's decision and remanded the matter on other grounds, on the basis of pretext.  Specifically, the Second Circuit held that the plaintiff had raised a genuine issue of material fact as to whether the employer applied the salary plan in a discriminatory way, such that the employer's stated reason was actually a pretext for gender discrimination. *Belfi*, 191 F.3d at 139.  Here, the parties stipulate that the collective bargaining agreement was properly applied, and Plaintiff, as discussed below, concedes that there is no evidence of pretext.  Accordingly, the Second Circuit's holding with regard to Defendant's affirmative defense, that the collective bargaining agreement coupled with the initial starting salaries, can, as a matter of law, be found to be a legitimate, business-related factor other than sex to explain the pay disparity, stands and applies to Plaintiff's claim.

consider merit increases.  Other courts in the Second Circuit have considered nearly identical

facts and found that such a system can, as a matter of law, qualify as a legitimate business-related

justification.  In *Birchmore v. Granville Cent. Sch. Dist.*, Case No. 18 Civ. 1456 (GLS)(CFH),

2021 WL 22606 (N.D.N.Y. Jan. 4, 2021), the Northern District  first determined that the

employer had set the plaintiff's and comparator's initial starting salaries based on legitimate

factors other than sex, including greater experience and more advanced education degrees.  *Id.* at

*5.  The court then explained that the employer had negotiated a collective bargaining agreement

with the union where, as here, teachers would be locked into a salary schedule based on a

teacher's initial salary, followed by annual pay increases at set percentages.  *Id.* at *3.

      The court held that the difference between the plaintiff's and the comparator's salaries, at

their starting levels *and* at the subsequent steps, was supported by legitimate factors other than

sex, as a matter of law.  *Birchmore*, 2021 WL 22606, at *5.  The Northern District noted that one

such legitimate factor could be setting a higher salary to "induce" a better qualified individual to

accept a position.  *Id.*  Accepting the defendant's argument as a matter of law, the court

dismissed the plaintiff's argument that the reason was pretextual and, accordingly, the court

granted the employer's motion for summary judgment as to the plaintiff's Equal Pay Act claim.

      The facts in *Belfi* and *Birchmore* are similar to the case here, and the Court reaches the

same conclusion.  The parties agree that Plaintiff's and the comparator's starting salaries differed

due to the comparator's higher qualifications.  The evidence shows that Defendant decided to pay

Plaintiff the minimum of her salary range due to her relatively small amount of experience and

lack of education credentials.  On the other hand, Defendant decided to pay the comparator a

higher salary within his range due to his educational degrees and more extensive professional

experience, which have been well-established to serve as legitimate, business related factors. The pay disparity continued based on an application of a gender-neutral collective bargaining agreement, and adherence to that agreement, based on the holdings in *Belfi* and *Birchmore*, also serves a legitimate, business-related interest. In other words, these cases support a finding that an employer may pay an employee a higher wage out the outset, with the promise to continue paying them a higher salary in the future, based on superior credentials and experience, in order to induce that employee to accept a position. Accordingly, Defendant has asserted a proper affirmative defense to Plaintiff's Equal Pay Act claim as a matter of law.

**C.    Plaintiff Does Not Show Pretext**

Because Defendant has articulated a legitimate, non-discriminatory reason for the pay disparity, the burden would now shift to Plaintiff to establish that that reason was a pretext for discrimination. As stated, evidence of a pretext may create a triable issue of fact that would defeat summary judgment, albeit for both parties in this instance. To that end, "circumstantial evidence that some discretion exists regarding these positions" may leave open the possibility that a pay disparity is caused by discrimination. *Belfi*, 191 F.3d at 138. Nevertheless, it is Plaintiff's burden to offer such evidence to raise a triable issue of fact. *Boatright*, 2020 WL 7388661, at *13.

Here, Plaintiff has expressly stated in her motion for summary judgment that "Plaintiff does not contend that Defendant's compensation plan is a pretext for sex discrimination, but rather that Defendant's reliance on the plan itself does not constitute a valid justification." [Dkt, 29, Plaintiff's Memorandum of Law at 2-3.] Accordingly, Plaintiff has failed to show pretext as a matter of law.

## V.  CONCLUSION

Based on the foregoing, the Court finds as a matter of law that Plaintiff has established a prima facie case under the Equal Pay Act and the New York Equal Pay Law, but Defendant has asserted a legitimate, non-discriminatory factor to explain the pay disparity, which Plaintiff has not shown was pretextual.  Accordingly, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED**.   The Clerk is respectfully directed to terminate the motions at Dkt. 23 and 27, and to close this case.

Dated:  November 3, 2021
       White Plains, New York

**SO ORDERED**

_____
Paul E. Davison, U.S.M.J.

22